*604 OPINION OF THE COURT
Herbert A. Posner, J.
Ben Franklin was fond of quoting maxims to emphasize a point. People came to accept his maxims as truisms, except when one maxim came into conflict with another. "A stitch in time saves nine”, could conflict with "Haste makes waste”, etc. Likewise, legal "maxims” (canons) are not to be taken as gospel if there is another legal canon that leads to a contrary conclusion.
In this case, plaintiffs[1] are seeking an exclusion from the threshold provisions of the no-fault law (Insurance Law, § 673) on the ground that, since the auto they were passengers in was uninsured, they are not covered persons. Therefore, they retain their common-law right to sue for negligence regardless of the nature of their injuries or the amount of their medical bills.[2] Their attorney put forth the legal maxim that "It is a presumption that the Legislature did not intend to interfere with the common rights of mankind, and any interference must, therefore, be expressed, not left to implication.” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 311.) Even more appropriate to plaintiffs’ contention is subdivision a of section 301 (McKinney’s Cons Laws of NY, Book 1, Statutes) — Rule of strict construction — "The Legislature in enacting statutes is presumed to have been acquainted with the common law, and generally, statutes in derogation or in contravention thereof, are strictly construed, to the end that the common law system be changed only so far as required by the words of the act and the mischief to be remedied.”
To date there have been four published opinions dealing with plaintiffs in an uninsured automobile (Pointer v Delinois, NYLJ, May 16, 1975, p 20, col 6; Kimbrough v Walker, 89 Misc 2d 177; Gamble v Randolph, 91 Misc 2d 436; Scarpelli v Marshall, 92 Misc 2d 244).
The Pointer and Kimbrough cases were diametrically opposed to each other. In Pointer, the court said that the passenger-wife, who was injured while in an uninsured vehicle owned and driven by her husband, is entitled to sue for pain and suffering even though she failed to meet the threshold requirements of the "no-fault” law. The court stated (p 20, col *605 6), "In the instant case the plaintiff, being a passenger in an uninsured motor vehicle, cannot make any claim for first party benefits and [therefore] need not plead or prove that her injuries were serious.” In Kimbrough, the court came to the conclusion that the Legislature intended to nonsuit uninsured motorists and their spouses, even if they met the threshold requirements (emphasis added); because "[t]here is no reference [in the statute] to an action by an 'uncovered person’ against a covered person.” (Kimbrough, supra, p 179.) Furthermore, since the owner of an uninsured motor vehicle is guilty of a misdemeanor (Vehicle and Traffic Law, § 319), it would be contrary to public policy to permit him to profit from his own wrongdoing (Riggs v Palmer, 115 NY 506, 513).
Gamble and Scarpelli essentially stand for the same conclusions of law though they approach the "target” from different directions.
In the Gamble case the plaintiff was an uninsured owner-operator who (as a result of the accident) sustained medical expenses of $352. The plaintiff admitted that his injuries did not constitute a "serious injury” as defined in section 671 of the Insurance Law; however, he contended that since he was not a "covered person”, under section 673 of the Insurance Law, he retained all of his rights to sue under the common law. The court disagreed with this theory but used language that indicated it would not go as far as Kimbrough. It said (p 437), "The plaintiff seeks, without having suffered a 'serious injury’ to place himself in a more favorable position than he would be if he had obeyed the law. The policy of this State prevents a person from pleading or proving his case in which he, as a basis of his claim, must set forth his illegal action. (McConnell v Commonwealth Pictures Corp., 7 NY2d 465.)”
The facts in the Scarpelli case differ from the Gamble case by one significant detail. In Scarpelli the plaintiff suffered a "serious injury”; but, relying upon the Kimbrough decision, the defendant contended that plaintiff had no cause of action whatsoever, since she was an uninsured motorist. Justice Niehoff in a well-reasoned decision, came to the conclusion that "the intention of the Legislature was to allow noncovered persons, like covered persons, to bring a negligence action provided the injuries sustained are 'serious’ as defined by statute.” He disagreed with the rationale in the Kimbrough case on the basis that: "An examination of section 673 of the Insurance Law discloses that it is silent with respect to a *606 cause of action for personal injuries sustained by a noncovered person. Nowhere does that section state that the cause of action which a noncovered person would have possessed prior to its enactment has been abrogated. To reach that conclusion one must rely upon inference * * * that the Legislature intended * * * to abrogate the cause of action of a noncovered person. However, the 'no-fault’ law is in derogation of the common law and it is a firmly established principle of law that statutes in derogation of the common law are to be strictly construed and the common law is never abrogated by implication * * *. (See McKinney’s Cons Laws of NY, Book 1, Statutes, § 301.)” (Scarpelli v Marshall, 92 Misc 2d 244, 247, supra.)
The Scarpelli decision comes closer to the true intent of the statute than any other decision. However, it falls one step short of the ultimate "truth”. It approaches the issue from the negative sense — telling us what the Legislature did not intend to do. Let us carry the rationale to its ultimate conclusion and see what was the positive intent of the statute.
The basic purpose of article 18 of the Insurance Law is to provide "a plan for compensating victims of automobile accidents without regard to fault.” (Montgomery v Daniels, 38 NY2d 41, 46.) Section 672 of the statute sets up a system of compensation for the payment of out-of-pocket expenses.[3] These payments are to be made generally by the insured’s3 [4] own carrier. Thus, we have set the stage for an analysis of section 673, which deals with "Causes of action for personal injury”.
Subdivision 1 of section 673 of the Insurance Law states: "Not withstanding any other law, in any action by or on behalf of a covered person against another covered person for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state, there shall be no right of recovery for non-economic loss, except in the case of a serious injury, or for basic economic loss.” Note that this language refers only to an action by one covered person *607 against another covered person. The section has a two-pronged effect. It says that a lawsuit based upon negligence for personal injuries cannot be maintained for "basic economic loss.” The reason for this is obvious. A covered person receives compensation for his out of pocket expenses (up to a maximum of $50,000) from his own carrier. Therefore, how can he sue for the same amount again?[5] The second prong of the section deals with "noneconomic loss” (otherwise known as "pain and suffering”). It limits a lawsuit for this element of damage to "serious” injuries only (as defined in section 671 of the Insurance Law). Thus, up to this point, we have a legislative scheme for compensating persons, injured in automobile accidents, for their basic economic loss without the need to prove fault. They derive their legal standing from the umbrella of insurance which must be provided in every owner’s policy of auto liability insurance in effect after January 31, 1974 (Insurance Law, § 672, subd 1). No mention having been made of uninsured motorists, it is obvious that they have no rights to "no-fault” benefits. As the Court of Appeals said, "Such persons operate their vehicles in violation of the law of our State (Vehicle and Traffic Law, arts 6, 8) and further make no contribution to the automobile injury compensation system designed to spread the risk of loss among all who drive.” (Montgomery v Daniels, 38 NY2d 41, 62, supra.)
Not providing for uninsured motorists to benefit from the "no-fault” plan does not mean they have lost their common-law right to recover their basic economic loss if they can prove the other party was at fault. The other side of this coin is effectuated by the Legislature in subdivision 2 of section 673 of the Insurance Law whereby the covered person is given an unlimited right to bring an action against a noncovered person for both first-party benefits and noneconomic loss (without limitation to a "serious” injury). To prevent the plaintiff from recovering twice for first-party benefits the statute gives the covered person’s insurer a lien against any recovery. Since the statute is silent about a noncovered person suing a covered person, could the converse be true? Does a noncovered person suing a covered person have the same rights as a covered person suing a noncovered person? We think not; because to *608 do so would be giving a person who violates the law[6] (and those who obtain legal standing through him) a greater benefit than a person who obeys the law.
The final legal maximum is that contained in section 96 of McKinney’s Statutes: "[A] basic * * * consideration in the interpretation of a statute is the general spirit and purpose underlying its enactment * * * and that construction is to be preferred which furthers the object, spirit and purpose of the statute.” The purpose of the no-fault law is (1) to provide a system of insurance for compensating injured persons for their basic economic loss, and (2) requiring that there be a "serious” injury before they can sue for nonbasic economic loss. Therefore, a person who is not insured does not get the benefit of the statute and must sue for both forms of loss. However, that person cannot sue for "serious” injury without having met the same requirements as a covered person. To say otherwise would be rewarding a noncovered person for violating the law. "To avoid an unintended result a statute should be given a rational interpretation consistent with achieving its purpose and with justice and common sense.” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 96; Matter of Anderson v Board of Educ., 46 AD2d 360; Freeman v Kiamesha Concord, 76 Misc 2d 915; Matter of Drake v Comptroller of City of N. Y., 278 App Div 317.)
Defendant’s motion to dismiss both plaintiff’s causes of action is denied as to the cause of action for basic economic loss, and is granted as to the cause of action for noneconomic loss. Since both plaintiffs have failed to allege a "serious” injury as defined by article 18 of the Insurance Law, their lawsuit is limited to their respective claims of $178 and $175 for basic economic loss.

. There are two plaintiffs, Evelyn Marc-Charles and her infant son Alain Marc-Charles. Evelyn was the owner of the automobile and her husband was the operator.

. Evelyn’s medical bills came to $178 and Alain’s medical bills came to $175.

. These expenses labeled as "first party benefits”, are fully detailed including certain limitations (maximum of $50,000 per person, etc.) under section 671 of the Insurance Law (dealing with "Definitions”).

. Defined by subdivision 10 of section 671 of the Insurance Law as a "covered person”. A "covered person” means any pedestrian injured through the use or operation of, or any owner, operator or occupant of, an insured motor vehicle.

. Since the statutory language excludes a suit for "basic economic loss”, it follows naturally that the injured party has a right to sue for his economic loss which is in excess of the "basic” amount of $50,000.

. Section 319 of article 6 of the Vehicle and Traffic Law makes the penalty for not having auto insurance a severe one with both criminal and civil consequences.